FILED
10/14/2020 10:30 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020L010986

FILED DATE: 10/14/2020 10:30 PM   2020L010986

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| **CYNTHIA DONALD**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. |
| **THE CITY OF CHICAGO**, | ) |
| a Municipal Corporation; and | ) **JURY TRIAL DEMANDED** |
| **EDDIE JOHNSON**, individually | ) |
| and as an agent of | ) |
| THE CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

---

**COMPLAINT AT LAW**

---

Plaintiff, Cynthia Donald, by and through her attorneys, Hart McLaughlin &

Eldridge, LLC, complaining of Defendants The City of Chicago, a municipal

corporation and former Chicago Police Department Superintendent Eddie Johnson,

states as follows:

**INTRODUCTION**

1.      For more than three years, Plaintiff, a police officer in the Chicago Police

Department ("CPD"), was subjected to unwanted and uninvited sexual advances,

abuse, harassment, and a hostile work environment by her superior and supervisor,

former CPD Superintendent Eddie Johnson ("Superintendent Johnson").

2.      At all times relevant to this complaint, Superintendent Johnson was the

highest-ranking member of the CPD.

1

FILED DATE: 10/14/2020 10:30 PM   2020L010986

3.      Superintendent Johnson, while serving as Plaintiff's superior and direct supervisor, engaged in shockingly violent, abusive, and harassing conduct towards Plaintiff.

4.      Superintendent Johnson forcibly kissed Plaintiff.

5.      Superintendent Johnson forcibly touched Plaintiff.

6.      Superintendent Johnson forced oral sex on Plaintiff.

7.      Superintendent Johnson forced vaginal sex on Plaintiff.

8.      Superintendent Johnson carried out many unwanted and unwelcomed sexual acts on Plaintiff in his personal office at CPD Headquarters where Plaintiff was also assigned.

9.      Superintendent Johnson texted nude photos of himself, including of his penis, to Plaintiff.

10.      Superintendent Johnson referred to Plaintiff by sexually derogatory names and in sexually demeaning contexts, including in the presence of other City of Chicago employees.

11.      Superintendent Johnson used his position of power and authority over Plaintiff to pressure her into engaging in these sexual acts by conditioning her employment and advancements within CPD upon her submission to unwanted and unwelcomed sexual activity, promising her promotions, and berating her whenever she summoned the courage to resist his advances.

12.       Not only is Superintendent Johnson individually liable to Plaintiff for his violent, abusive, and harassing conduct, but because Superintendent Johnson was

2

FILED DATE: 10/14/2020 10:30 PM    2020L010986

Plaintiff's supervisor and the highest-ranking member of the CPD with final policymaking authority, the City of Chicago is liable as well.

13.     What's more, when the City of Chicago learned of various details relating to Plaintiff and Superintendent Johnson through a highly publicized incident occurring on October 16, 2019, Defendant (directly through Mayor Lori Lightfoot) worked to deflect blame from the City of Chicago instead of protecting Plaintiff – the victim of Superintendent Johnson's wrongful conduct.

14.     Following the October 16, 2019 incident, Mayor Lightfoot publicly acknowledged that Superintendent Johnson lied to her and lied to the public in an effort to cover up his misconduct.[1]

15.     It was reported that Mayor Lightfoot said, "It has become clear that Mr. Johnson engaged in a series of actions that are intolerable for any leader in a position of trust."[2]

16.     However, in the days following the Eddie Johnson incident, neither Mayor Lightfoot, the City of Chicago, nor the CPD ever formally interviewed or even informally spoke with Plaintiff about the incident or the pattern of abuse she suffered from Superintendent Johnson.

17.     Instead, Mayor Lightfoot exacerbated the hostile work environment by ordering Superintendent Johnson to "dump" Plaintiff by having her relocated away from CPD Headquarters.

---

[1] https://chicago.suntimes.com/2020/7/3/21312030/lori-lightfoot-eddie-johnson-joe-ferguson-firing-release-report-must.
[2] *Id.*

FILED DATE: 10/14/2020 10:30 PM    2020L010986

18.     Thereafter, Karen Konow, Chief of CPD's Bureau of Internal Affairs, requested that the Office for the Inspector General for the City of Chicago "conduct an investigation of an incident in which CPD Superintendent Eddie Johnson is alleged to have parked illegally and slept behind the wheel of a CPD vehicle."

19.     On or around November 14, 2019 the Office of the Inspector General then notified Plaintiff that eight "allegations" were being made against her related to the incident during which Superintendent Johnson parked illegally and was found asleep behind the wheel of a CPD vehicle.

20.     Several attorneys with the Office of the Inspector General conducted multiple lengthy interrogations and cross-examinations of Plaintiff, including on November 25, 2019 and on April 15, 2020.

21.     Also in or around April 15, 2020, an attorney from an outside private law firm hand-picked and retained by the City of Chicago threatened Plaintiff that she could be subject to additional adverse employment action if she refused to sit for a third interrogation and cross-examination.

22.     Plaintiff confirmed for the Inspector General that she was "ordered" by Superintendent Johnson to accompany him on the evening of October 16, 2019 as he had done many times before as Plaintiff's superior and boss.

23.     On December 2, 2019, Mayor Lightfoot terminated Superintendent Johnson for lying about what happened on the night of October 16, 2019.

FILED DATE: 10/14/2020 10:30 PM    2020L010986

24. On or around June 29, 2020, CPD released bodycam footage showing Superintendent Johnson asleep behind the wheel of his parked car.[3]

## JURISDICTION AND VENUE

25. This Court has jurisdiction over this case pursuant to Section 2-209 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-209.

26. Venue is proper under 735 ILCS 5/2-101. All parties reside in this county and the events pertaining to the claims made in this complaint occurred in this county.

27. All conditions precedent to filing suit have been met.

28. On February 19, 2020, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights.

29. A "right to sue letter" was issued to Plaintiff by the United States Department of Justice, Civil Rights Division, on July 20, 2020. (Exhibit A, Right to Sue Letter).

## PARTIES

30. Plaintiff is a female employee of the Defendant City of Chicago, holding the position of police officer.

31. The City of Chicago is an employer as defined by Title VII of the Civil Rights Act of 1964 and was at all times relevant to this complaint, Plaintiff's employer.

---

[3] https://abc7chicago.com/eddie-johnson-chicago-police-department-bodycam-video-cpd/6282481/.

FILED DATE: 10/14/2020 10:30 PM    2020L010986

32.     At all times relevant to the complaint, Superintendent Johnson was the Superintendent of the CPD and was serving in a supervisory capacity over Plaintiff.

33.     At all times relevant to the complaint, Superintendent Johnson was a person with final policymaking authority within the City of Chicago and the CPD.

34.     The City of Chicago and the CPD conducted its police functions under color of state law through its officers and employees.

35.     The City of Chicago employed and conferred authority upon Superintendent Johnson to act with final policymaking authority, to act in a supervisory capacity to CPD police officers, including Plaintiff, and at all times relevant to the complaint, the Defendants were acting under color of state law.

## BACKGROUND

### I.     The City of Chicago's Recognition of Sexual Misconduct in Police Department Settings

36.     The City of Chicago is well aware of the prevalence and reality of law enforcement sexual misconduct.

37.     Indeed, the City of Chicago's own training materials regarding sexual misconduct in law enforcement explicitly acknowledge the seriousness of the issue:



6

FILED DATE: 10/14/2020 10:30 PM    2020L010986

38.     The City of Chicago's own training materials further acknowledge that law enforcement sexual misconduct has been a problem "for DECADES."



39.     The City of Chicago's own training materials cite to the International Association of Chiefs of Police ("IACP") statement that, "[t]he problem of sexual misconduct by officers warrants the full attention of law enforcement leadership. It represents a grave abuse of authority and violation of the civil rights of those victimized."



7

FILED DATE: 10/14/2020 10:30 PM   2020L010986

40.     The City of Chicago's own training materials cite the IACP's definitions of law enforcement sexual misconduct as:

> ### Law Enforcement Sexual Misconduct Defined:
>
> "*Any behavior* by an officer that takes advantage of the officer's position to *misuse authority and power* in order to *commit a sexual act*, *initiate sexual contact with another person*, or *respond to perceived sexually motivated cue from another person...*
>
> *Addressing Sexual Offenses and misconduct by Law Enforcement*
> *IACP Executive Guide, published June 2011*

> ### Law Enforcement Sexual Misconduct Defined:
>
> "*...It also includes any communication or behavior that would likely be construed as lewd, lascivious, inappropriate, or conduct unbecoming an officer and violates general principles of acceptable conduct common to law enforcement*"
>
> *Addressing Sexual Offenses and misconduct by Law Enforcement*
> *IACP Executive Guide, published June 2011*

41.     The City of Chicago's Policy on Sexual Harassment states that, "each employee has the right to work in an environment free of discrimination, including sexual harassment. No person should be required to endure **sexual harassment by supervisors** or coworkers or work in a hostile environment as a condition of employment." (emphasis added):

FILED DATE: 10/14/2020 10:30 PM    2020L010986



**CITY OF CHICAGO**
**POLICY ON SEXUAL HARASSMENT**

I.    **STATEMENT OF POLICY**

A.    The City of Chicago is committed to providing a workplace in which all individuals are treated with respect and dignity. Each employee has the right to work in an environment free of discrimination, including sexual harassment. No person should be required to endure sexual harassment by supervisors or coworkers or work in a hostile environment as a condition of employment. Furthermore, this Policy applies to all phases of employment, including but not limited to recruitment, testing, hiring, upgrading, promotion or demotion, transfer, layoff, termination, rates of pay, benefits, and selection for training. The City of Chicago also is committed to preventing sexual harassment of persons receiving City services.

42.    The City of Chicago's Policy on Sexual Harassment prohibits:

"any unwelcome sexual advance or request for sexual favors or conduct of a sexual nature when submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment . . . or when submission to or rejection of such conduct by an individual is used as the basis of any employment or service decision affecting the individual; or when such conduct has the purpose or effect of substantially interfering with the work performance of an employee or creating an intimidating, hostile, or offensive work environment."

43.    The City of Chicago's Policy on Sexual Harassment prohibits:

"sexual harassment" as "a broad range of conduct which can, in certain circumstances, be considered sexual harassment under this Policy. This includes, but is not limited to, sexually suggestive or offensive remarks or rumors, sexually suggestive pictures or graffiti, sexual suggestive gesturing, verbal harassment or abuse of a sexual nature, the displaying of sexual objects, subtle or direct propositions for sexual favors, stalking, sexual assault, touching, patting, or pinching, and sending sexually suggestive e-mail messages."

FILED DATE: 10/14/2020 10:30 PM    2020L010986

44.    The City of Chicago acknowledges how sexually harassing behavior is likely to develop, including in the law enforcement setting:



45.    As detailed below, the timeline and narrative of Superintendent Johnson's sexual misconduct against Plaintiff is the classic scenario, one which the City of Chicago's own policies and training documents acknowledge is an existing problem in the law enforcement setting.

46.    Indeed, it is widely known and reported that there is a pattern of sexual abuse, harassment, retaliation and hostile work environment within the CPD perpetrated by male superiors against female subordinates.[4]

47.    One recent example is the case of CPD Officer Kelly Hespe who alleged that her superior and supervisor, CPD Sergeant Gerald Breimon, forced Officer Hespe to engage in sexual acts while on duty over the course of a three year period, approximately the same duration of Superintendent Johnson's abuse of Plaintiff.[5]

---

[4] https://www.chicagotribune.com/politics/ct-chicago-police-sexual-harassment-settlements-20200109-mz4bafmflzaurpcz2zj63cjkm4-story.html.
[5] *Id.*

FILED DATE: 10/14/2020 10:30 PM     2020L010986

48.     The City of Chicago reportedly settled Officer Hespe's lawsuit for $300,000 of taxpayers' money.[6]

49.     Another example is the case of CPD Officer Laura Kubiak who alleged she was fired for reporting a fellow superior CPD officer who called her a "stupid b*itch" and threatened her while on duty.[7]

50.     It was alleged that after Officer Kubiak reported the incident she was ousted from her job while the accused high ranking CPD officer, who had a lengthy history of misconduct complaints, kept his same job.[8]

51.     The City of Chicago reportedly settled Officer Kubiak's lawsuit for nearly $4,000,000 of Chicago taxpayers' money.[9]

52.     CPD Officer Shannon Spalding reportedly stated that "there is nowhere in the department where [anyone] can go and say 'this is what happened' without losing their job, possibly even their life."[10]

53.     When Officer Spalding reported the misconduct of CPD Sergeant Ronald Watts and others, she was labeled a "rat" by her superiors within the CPD and she was demoted to less desirable jobs.[11]

54.     The City of Chicago settled Officer Spalding's lawsuit for $2,000,000 of taxpayers' money, allowing then Mayor Rahm Emanuel to escape from having to

---

[6] *Id.*

[7] https://blockclubchicago.org/2020/09/10/what-happens-when-chicago-cops-speak-up-about-police-misconduct-their-lives-are-ruined-whistleblowers-say/.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

testify in a public courtroom under oath regarding the code of silence within the CPD which Mayor Emanuel admitted exists.[12]

55.     In a comprehensive data analysis conducted by the Chicago Alliance Against Sexual Exploitation ("CAASE") which was published in October 2020, over the last decade a staggering 80% to 90% of survivors of sexual violence in Chicago never saw an initial arrest in their case.[13]

56.     Notably, Superintendent Johnson was CPD's highest ranking police officer for nearly 5 years of the 10-year period analyzed by CAASE.

57.     CAASE determined that only 3% to 6% of all sexual assaults that occur in Chicago lead to *any* intervention by Chicago law enforcement.[14]

58.     As such, CAASE has concluded "if the purported purpose of law enforcement is to investigate and arrest people who have caused [sexual] harm, Chicago police are failing."[15]

59.     CAASE noted that criminal sexual assault in which the victim and perpetrator know one another (commonly referred to as acquaintance or date rape) is frequently depicted in our society as a misunderstanding between friends, or a hazy evening clouded by intoxication or other factors, rather than what it is: rape.[16]

---

[12] *Id.*
[13] Too Little, Too Late? The CPD's Response to Sex Crimes 2010-2019, Chicago Alliance Against Sexual Exploitation.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 8.

FILED DATE: 10/14/2020 10:30 PM    2020L010986

FILED DATE: 10/14/2020 10:30 PM    2020L010986

60.     CAASE concluded that the Chicago police are failing and changes need to be made.[17]

61.     Accordingly, CAASE has set out a multi-point strategic plan for Chicago leaders, and specifically Mayor Lori Lightfoot, to address the crisis of CPD's failure to adequately handle sexual assaults.[18]

62.      Mayor Lightfoot has confessed that the City of Chicago needs to do better to ensure that officers who report misconduct have the support they need.[19]

63.     In fact, so much improvement is needed that as of September 2020 Mayor Lightfoot admitted that the issue needs to be addressed in contract talks with the Fraternal Order of Police.[20]

## II.     **Factual Background**

64.     In or around November 2006, Plaintiff began her career as a police officer with the CPD.

65.     During the summer of 2015, based on information and belief, Superintendent Johnson first noticed Plaintiff working as a CPD officer while she was assigned to the First District.

66.     Around that time, and on information and belief, Superintendent Johnson called a friend of his, described Plaintiff's physical appearance, and stated in a sexually suggestive and demeaning manner, "How did we miss *this* one?"

---

[17] *Id.* at 16.
[18] *Id.* at 12-13.
[19] https://www.radio.com/wbbm780/articles/city-to-fork-over-38m-to-former-cop-in-abuse-settlement.
[20] *Id.*

FILED DATE: 10/14/2020 10:30 PM   2020L010986

67.     Superintendent Johnson then masterminded a plan to have Plaintiff assigned to his unit so that he could be close to her, keep her under his control, dictate her work hours and schedule, ply her with alcohol, and perpetrate his sexual harassment and abuse of her.

68.     In or around May 2016, Superintendent Johnson arranged for Plaintiff to be assigned to his detail.

69.     Approximately six months later, Superintendent Johnson arranged for Plaintiff to be his personal driver.

70.     Shortly thereafter, Superintendent Johnson began using his authority as Plaintiff's supervisor to engage in years of sexually harassing and abusive conduct directed at Plaintiff creating an ongoing pattern of emotional, physical and sexual abuse of Plaintiff.

**A.    Superintendent Johnson Sexually Assaults and Harasses Plaintiff**

71.     The first incident occurred around the end of June or early July of 2016 before Plaintiff drove Superintendent Johnson to an event that he was scheduled to attend in his capacity as the Superintendent of the CPD.

72.     Before leaving CPD Headquarters for the event, Superintendent Johnson requested that Plaintiff come to his personal office, located in the CPD Headquarters building.

73.     Upon entering Superintendent Johnson's office, Plaintiff excused herself to a side room to make sure she looked appropriate for the event.

FILED DATE: 10/14/2020 10:30 PM    2020L010986

74. While Plaintiff was readying herself for the event, Superintendent Johnson entered the room, forced Plaintiff onto a nearby couch, pulled Plaintiff's pants down without her consent, and forcibly performed unwanted oral sex on her.

75. Superintendent Johnson then ejaculated onto Plaintiff's body and told her, "now you know you belong to me."

76. Thereafter, Superintendent Johnson engaged in regular and frequent sexually harassing, abusive, and humiliating conduct towards Plaintiff, conduct which was persistent and unwanted and continued through the end of 2019.

77. On multiple occasions from 2016 through 2019, and while on City of Chicago property, Superintendent Johnson forcibly pried Plaintiff's legs open and performed unwanted oral sex on her.

78. On multiple occasions from 2016 through 2019, Superintendent Johnson locked Plaintiff in his personal office and conditioned her release from his office on Plaintiff performing sexual acts on him.

79. On multiple occasions from 2016 through 2019, Superintendent Johnson required Plaintiff to travel with him on work related trips that were sanctioned and paid for by the City of Chicago.

80. On multiple occasions from 2016 through 2019, while on work-related trips, Superintendent Johnson's conduct demonstrated that he expected Plaintiff to perform sexual acts on him.

15

FILED DATE: 10/14/2020 10:30 PM 2020L010986

81.     On multiple occasions from 2016 through 2019, while on work-related trips, Superintendent Johnson ordered Plaintiff to come into his hotel room and engage in sexual activity.

82.     On occasions during these work-related trips that Plaintiff was able to avoid Superintendent Johnson's sexual advances, Superintendent Johnson would tell Plaintiff that she "got away this time."

83.     On multiple occasions, after Superintendent Johnson forced Plaintiff to perform a sexual act on him, Superintendent Johnson made sexually suggestive and harassing remarks to Plaintiff such as, "The City owes you another check for making my workday easier" and "you get me through this job."

84.     Superintendent Johnson regularly sent Plaintiff unwanted and harassing text messages.

85.     Superintendent Johnson sent Plaintiff nude pictures of himself, including of his naked penis.

86.     Superintendent Johnson regularly and frequently forcefully touched and kissed Plaintiff, including while on City of Chicago property.

87.     Superintendent Johnson regularly referred to Plaintiff by sexually derogatory names and in sexually demeaning contexts. For instance:

    a. When Plaintiff did not have to wear her police uniform for various City of Chicago work events, Superintendent Johnson would tell Plaintiff to "wear something cute" and that her wearing such "cute" outfits for him was, "the nature of the job."

16

FILED DATE: 10/14/2020 10:30 PM   2020L010986

b.  Superintendent Johnson told Plaintiff that other police officers wanted to "give him p*ssy" but that his focus was on Plaintiff;

c.  Superintendent Johnson told other City of Chicago employees that Plaintiff was "his girl;" and

d.  Superintendent Johnson told Plaintiff, "you gonna give me some and like it."

88.  On an occasion when Superintendent Johnson had a verbal altercation with his secretary, the secretary said to him, "I see you're having a bad day, let me go get Cynthia [Plaintiff] – your eye candy."

89.  Superintendent Johnson regularly and frequently asked Plaintiff what color underwear she was wearing, including while on City of Chicago property and during work hours.

90.  Superintendent Johnson kept alcoholic beverages in his office at CPD Headquarters and on several occasions plied Plaintiff with alcohol into performing unwanted sexual acts.

**B.    Superintendent Johnson's Actions Towards Plaintiff were Unwanted**

91.  On multiple occasions between 2016 and 2019, Plaintiff asked Superintendent Johnson to stop sexually harassing and assaulting her.

92.  On multiple occasions between 2016 and 2019, Plaintiff asked Superintendent Johnson to stop kissing her.

93.  On multiple occasions between 2016 and 2019, Plaintiff asked Superintendent Johnson to stop asking her about her underwear.

FILED DATE: 10/14/2020 10:30 PM   2020L010986

**C.     Superintendent Johnson Used his Position of Power and Authority over Plaintiff to Pressure Plaintiff into Engaging in Sexual Acts**

94.     In or around the fall of 2019, Superintendent Johnson learned that Plaintiff was interested in taking the CPD Sergeant's exam.

95.     Plaintiff expressed reservations about taking the exam because she did not think she had time to study. Superintendent Johnson, however, pressured Plaintiff into studying for the exam anyway.

96.     While Plaintiff was studying for the CPD Sergeant's exam, Superintendent Johnson told Plaintiff that she needed to "stay on his good side" if she wanted to make merit Sergeant, and that he could make that happen for Plaintiff.

97.     Superintendent Johnson repeatedly told Plaintiff that "the list of favors" that Plaintiff owed him was growing longer with each person he moved to a different unit to clear the way for Plaintiff to be promoted to Sergeant.

98.     In exchange, Superintendent Johnson demanded that Plaintiff "pay up soon," which communicated to Plaintiff that she would have to perform sexual acts on him.

99.     Superintendent Johnson regularly talked to Plaintiff about female CPD officers who wanted to "give him some" in exchange for promotions or "comfortable assignments."

100.    When Superintendent Johnson believed another male CPD officer was showing an interest in Plaintiff, Superintendent Johnson would tell Plaintiff, "don't have me put him somewhere on midnights [shifts]."  Plaintiff took such comments to

18

be an outward expression and threat of the power Superintendent had over Plaintiff and the entire CPD to retaliate against and demote anyone he chose for any reason he chose, including Plaintiff.

101.    On occasions that Plaintiff would resist Superintendent Johnson's sexual overtures, Superintendent Johnson would throw tantrums and berate Plaintiff until she acquiesced and participated in unwanted sexual acts.

**D.    October 16, 2019 Incident and Resulting Fallout**

102.    On October 16, 2019, Plaintiff was sitting at her office desk when Superintendent Johnson ordered her to leave her desk and get in his car. Superintendent Johnson then drove Plaintiff to a restaurant.

103.    After the restaurant, Superintendent Johnson drove Plaintiff back to her car and Plaintiff drove herself home.

104.    Superintendent Johnson, however, did not go home. He was found hours later by CPD police officers asleep in his car and allegedly intoxicated.

105.    Superintendent Johnson's behavior on October 16, 2019 caused the City of Chicago great embarrassment and led to an investigation by the City of Chicago through which Mayor Lightfoot learned of Superintendent Johnson's highly inappropriate behavior towards Plaintiff.

106.    While the City's own training materials reference empowering victims and survivors to report instances of sexual misconduct by "help[ing] victims feel

FILED DATE: 10/14/2020 10:30 PM    2020L010986

physically, psychologically, and emotionally safe in the reporting process" and to avoid "victim blaming," here, the City did the opposite.[21]

107.    Mayor Lightfoot directed Superintendent Johnson to "dump" Plaintiff by removing Plaintiff from Superintendent Johnson's detail and sending Plaintiff back to the First District, a demotion, away from CPD Headquarters.

108.    Approximately one month later, around November 14, 2019, Plaintiff was notified of various allegations of misconduct being brought against her.

109.    These allegations of misconduct were brought in retaliation for Plaintiff's connection to the October 16, 2019 incident and to deflect blame from Superintendent Johnson, Mayor Lightfoot, and the City of Chicago, and represent an ongoing practice of discrimination and constitute a continuing violation.

110.    After Mayor Lightfoot ordered Superintendent Johnson to remove Plaintiff from his detail and demote Plaintiff to the First District, Superintendent Johnson made the following derogatory remarks to Plaintiff, referring to Plaintiff as his "music":

> "that bitch [Mayor Lori Lightfoot] is trying to steal 'my music'"

> and

> "this tiny negro [Mayor Lori Lightfoot] is still clowning"

111.    Superintendent Johnson, however, was not ready to let Plaintiff go. Instead of transferring Plaintiff out of CPD Headquarters (where Superintendent Johnson's personal office was located), Superintendent Johnson placed Plaintiff in

---

[21] Tremblay, T. (2020) "Public Trust: Investigating Law Enforcement Sexual Misconduct" (PowerPoint Presentation).

FILED DATE: 10/14/2020 10:30 PM        2020L010986

FILED DATE: 10/14/2020 10:30 PM    2020L010986

the records department on the second floor of Headquarters where he could continue to sexually harass her.

112.   Superintendent Johnson continued to demand that Plaintiff come to his fifth-floor office so he could continue to sexually harass and assault her.

113.   On one such occasion, Plaintiff's young son was visiting Plaintiff at work when Superintendent Johnson called on Plaintiff to come to his fifth-floor office with her son.

114.   Superintendent Johnson then attempted to touch Plaintiff's buttocks while her son was facing another direction but with the possibility of Plaintiff's son witnessing this nonconsensual and unwanted sexual assault.

115.   As more details relating to the October 16, 2019 incident came to light in the media, Superintendent Johnson confessed to Plaintiff that he damaged or destroyed evidence contained in his cell phone.

116.   As part of its investigation into the October 16, 2019 incident, the City of Chicago Inspector General requested possession of Plaintiff's cell phone.

117.   Plaintiff left her cell phone on her desk at CPD Headquarters.

118.   The Inspector General has since claimed that the SIM card in Plaintiff's cell phone was damaged or destroyed.

119.   In order for Superintendent Johnson to destroy all evidence of his text message and/or email exchanges with Plaintiff he would have to destroy the evidence of his sexual assaults and sexual harassment contained in both his cell phone and Plaintiff's cell phone.

FILED DATE: 10/14/2020 10:30 PM    2020L010986

### E.    Plaintiff's Injuries

120.    Plaintiff's constitutional right to her bodily integrity was taken from her by Superintendent Johnson.

121.    Plaintiff's dignity as a human being was taken away from her by Superintendent Johnson.

122.    Following his termination from CPD, Superintendent Johnson stalked Plaintiff by constantly calling, texting and showing up to locations where he knew Plaintiff would be, resulting in Plaintiff fearing for her personal safety.

123.    As a result of the conduct described above, Plaintiff has been treated by multiple mental health professionals.

124.    Defendants' actions have damaged Plaintiff and caused Plaintiff to suffer physical and psychiatric injuries.

125.    Plaintiff has been diagnosed as having Chronic "Post Traumatic Stress Disorder" as a direct result of Defendants' actions and course of conduct.

126.    Post-Traumatic Stress Disorder ("PTSD") is a mental illness that can develop after a person is exposed to one or more traumatic events, such as sexual assault.

127.    PTSD symptoms include disturbing flashbacks, avoidance, or numbing of memories of the event, and hyperarousal which continue for more than a month after the occurrence of a traumatic event.[22]

---

[22] https://icd.codes/icd10cm/F4312.

FILED DATE: 10/14/2020 10:30 PM    2020L010986

128.    Plaintiff has also been diagnosed as having Confirmed "Adult Psychological Abuse" as a direct result of Defendants' actions and course of conduct.

129.    Adult Psychological Abuse, also referred to as psychological violence emotional abuse or mental abuse, is a form of abuse characterized by a person subjecting or exposing another to behavior that may result in psychological trauma, including anxiety, chronic depression, or post-traumatic stress disorder.

130.    Adult Psychological Abuse is often associated with situations of power imbalance, such as abusive relationships, bullying, and abuse in the workplace.[23]

131.    Plaintiff lives in a constant state of fear for her personal safety and her son's safety.

132.    Plaintiff suffers from severe depression, anxiety, and stress.

133.    Plaintiff's symptoms include regular nightmares about Superintendent Johnson, hair loss, weight gain, and embarrassment.

## COUNT I
### Title VII, 42 U.S.C. §2000(e) *et seq.* – Sexual Discrimination, Harassment, and Hostile Work Environment Claim
### Against Defendant City of Chicago

134.    Each of the foregoing paragraphs are incorporated herein as if fully restated.

135.    At all relevant times, Superintendent Johnson was Plaintiff's supervisor and employed by the City of Chicago.

136.    As described above, Superintendent Johnson's conduct toward Plaintiff was unwelcome and occurred because of and based upon Plaintiff's gender.

---

[23] https://icd.codes/icd10cm/T7431XA.

FILED DATE: 10/14/2020 10:30 PM    2020L010986

137.    Superintendent Johnson's conduct occurred over several years, constituting a continuing course of discrimination towards Plaintiff.

138.    Superintendent Johnson committed an unlawful employment practice by treating Plaintiff differently because of her sex, causing a change in the condition of her employment and subjecting her to a hostile work environment.

139.    Plaintiff was subjected to a sexually objectionable environment that was both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that Plaintiff in fact did perceive to be so.

140.    The conduct of Plaintiff's employer had the purpose or effect of unreasonably interfering with Plaintiff's work performance.

141.    The conduct of Plaintiff's employer had the purpose or effect of creating an intimidating, hostile and offensive work environment.

142.    The actions of Plaintiff's employer permeated the workplace with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive and regular to alter the conditions of Plaintiff's employment and create an abusive working environment.

143.    Defendant has therefore denied Plaintiff her rights under the Civil Rights Act of 1964 and she has suffered damages as a direct result of her rights being violated, including those set forth in paragraphs 120-133, which are likely to continue into the future.

FILED DATE: 10/14/2020 10:30 PM    2020L010986

## COUNT II
### 42 U.S.C. §1983 – Equal Protection Claim
### Against Defendant Superintendent Johnson

144.    Each of the foregoing paragraphs are incorporated herein as if fully restated.

145.    Plaintiff is a female and is a member of a protected class.

146.    Plaintiff was similarly situated to individuals not of the protected class such as male coworkers.

147.    Superintendent Johnson treated Plaintiff differently than other similarly situated male employees without a legitimate governmental purpose of doing so.

148.    Superintendent Johnson was personally involved in the constitutional violations of Plaintiff.

149.    Superintendent Johnson's actions with respect to Plaintiff were motivated by a discriminatory purpose, in violation of Plaintiff's constitutional rights to equal protection under the law and her right to bodily integrity.

150.    Superintendent Johnson acted with discriminatory intent.

151.    As a direct and proximate result of this equal protection violation, Plaintiff suffered damages, including those set forth in paragraphs 120-133.

## COUNT III
### 42 U.S.C. §1983 – *Monell* Claim
### Against Defendant City of Chicago

152.    Each of the foregoing paragraphs are incorporated herein as if fully restated.

FILED DATE: 10/14/2020 10:30 PM    2020L010986

153.     At all times relevant to the complaint Superintendent Johnson was a person with final policymaking authority within the City of Chicago and CPD.

154.     At all times relevant to the complaint Superintendent Johnson was a policymaker for the City of Chicago.

155.     By compelling and demanding that Plaintiff engage in sexual activity, Superintendent Johnson, an agent of the City of Chicago, violated Plaintiff's Fourteenth Amendment rights to substantive due process, liberty interests, and bodily integrity.

156.     By treating Plaintiff differently because of her sex, Superintendent Johnson, an agent of the City of Chicago, violated Plaintiff's rights to equal protection under the Fourteenth Amendment.

157.     As a direct and proximate result of the decisions and actions of Superintendent Johnson, an agent of the City of Chicago with final policymaking authority, Plaintiff suffered damages, including those set forth in paragraphs 120-133.

**COUNT IV**
**Illinois Gender Violence Act 749 ILCS 82/5**
**Against Defendant Superintendent Johnson**

158.     Each of the foregoing paragraphs are incorporated herein as if fully restated.

159.     Superintendent Johnson's conduct, as described in the foregoing paragraphs, was insulting, offensive, done intentionally and knowingly, and without Plaintiff's consent.

160.   Superintendent Johnson's conduct, as described in the foregoing paragraphs, satisfies the elements of battery under the laws of Illinois.

161.   Superintendent Johnson's conduct, as described in the foregoing paragraphs, was committed on the basis of Plaintiff's sex.

162.   Superintendent Johnson's conduct, as described in the foregoing paragraphs, was of a sexual nature.

163.   Superintendent Johnson's conduct was committed under coercive conditions in that Superintendent Johnson was Plaintiff's supervisor and took advantage of his authority over Plaintiff.

164.   Superintendent Johnson's conduct, as described in the foregoing paragraphs, included threats which caused Plaintiff a realistic apprehension that Superintendent Johnson would commit the acts threatened.

165.   As a direct and proximate result, Plaintiff suffered damages, including those set forth in paragraphs 120-133.

### COUNT V
**Spoliation of Evidence**
**Against Defendant Superintendent Johnson**

166.   Each of the foregoing paragraphs are incorporated herein as if fully restated.

167.   Plaintiff and Superintendent Johnson were in possession of text messages on their respective cell phones relating to Superintendent Johnson's sexually abusive, harassing, and discriminatory conduct towards Plaintiff that created a hostile work environment.

FILED DATE: 10/14/2020 10:30 PM   2020L010986

FILED DATE: 10/14/2020 10:30 PM    2020L010986

168. Said text messages were critical evidence in establishing Superintendent Johnson's sexually abusive, harassing, and discriminatory conduct towards Plaintiff and the resulting hostile work environment.

169. Superintendent Johnson had a pre-suit duty to preserve said text messages given their relevance and probity to Plaintiff's case.

170. Superintendent Johnson breached the duty by engaging in an active cover up when he erased, damaged, and/or destroyed his own cell phone which electronically stored said text messages.

171. As a direct and proximate result of Superintendent Johnson's breach of duty, Plaintiff has been severely injured because if Superintendent Johnson had not destroyed his own cell phone, Plaintiff would have been able to introduce additional evidence of her sexual discrimination and harassment case against Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Cynthia Donald, by and through her attorneys, Hart McLaughlin & Eldridge, LLC, respectfully requests that the Court enter an Order granting the following relief against the Defendants, Superintendent Johnson and the City of Chicago:

A. Awarding Plaintiff actual damages;

B. Awarding Plaintiff damages for her psychological injuries and emotional distress;

C. Awarding Plaintiff punitive damages;

FILED DATE: 10/14/2020 10:30 PM   2020L010986

D.      Awarding Plaintiff her reasonable attorneys' fees and litigation costs;
and

E.      Awarding such other and further relief as the Court deems reasonable
and just.

## **JURY DEMAND**

Plaintiff demands a trial by jury in this action on each and every one of her
claims.

Dated: October 14, 2020

Respectfully Submitted,

*/s/* Robert J. McLaughlin, Esq.

Robert J. McLaughlin, Esq.
Steven A. Hart, Esq.
Brian H. Eldridge, Esq.
Carter D. Grant, Esq.
Jack B. Prior, Esq.
**Hart McLaughlin & Eldridge, LLC**
22 West Washington, Suite 1600
Chicago, Illinois 60602
Tel:  (312) 955-0545
Fax: (312) 971-9243
FIRM ID: 59648
rmclaughlin@hmelegal.com
shart@hmelegal.com
beldridge@hmelegal.com
cgrant@hmelegal.com
jprior@hmelegal.com

FILED DATE: 10/14/2020 10:30 PM   2020L010986

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION**

| | | |
|---|---|---|
| **CYNTHIA DONALD**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. |
| **THE CITY OF CHICAGO**, | ) | |
| a Municipal Corporation; and | ) | **JURY TRIAL DEMANDED** |
| **EDDIE JOHNSON**, individually | ) | |
| and as an agent of | ) | |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(b)

Pursuant to Supreme Court Rule 222(b), counsel for the above-named plaintiff certifies that she is seeking money damages in excess of fifty thousand dollars ($50,000.00).

Dated: October 14, 2020

Respectfully Submitted,

*/s/* Robert J. McLaughlin, Esq.

Robert J. McLaughlin, Esq.
Steven A. Hart, Esq.
Brian H. Eldridge, Esq.
Carter D. Grant, Esq.
Jack B. Prior, Esq.
**Hart McLaughlin & Eldridge, LLC**
22 West Washington, Suite 1600
Chicago, Illinois 60602
Tel: (312) 955-0545
Fax: (312) 971-9243
FIRM ID: 59648

FILED DATE: 10/14/2020 10:30 PM   2020L010986

rmclaughlin@hmelegal.com
shart@hmelegal.com
beldridge@hmelegal.com
cgrant@hmelegal.com
jprior@hmelegal.com

FILED
10/14/2020 10:30 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL

2020L010986

FILED DATE: 10/14/2020 10:30 PM   2020L010986

# EXHIBIT A

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

**VIA EMAIL**

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

July 20, 2020

Ms. Cynthia Donald
c/o Carter Grant, Esquire
Law Offices of Hart, McLaughlin & Eldridge
22 W. Washington Street
Suite 1600
Chicago, IL 60602

Re: EEOC Charge Against City of Chicago, Chicago Police Dept.
     No. 440202003172

Dear Ms. Donald:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Chicago District Office, Chicago, IL.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Eric S. Dreiband
Assistant Attorney General
Civil Rights Division

by     /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Chicago District Office, EEOC
   City of Chicago, Chicago Police Dept.

FILED DATE: 10/14/2020 10:30 PM   2020L010986