IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Cynthia Donald, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 20-cv-6815 |
| | ) |
| City of Chicago and Eddie Johnson, | ) |
| | ) |
| Defendants. | ) |

Memorandum Opinion and Order

Plaintiff Cynthia Donald is a police officer in the Chicago Police Department. She alleges that over a period of three years, she was subjected to sexual abuse, harassment, and a hostile work environment by her supervisor and superior, former Chicago Police Department Superintendent Eddie Johnson. Ms. Donald brings the instant action against Mr. Johnson and the City of Chicago, asserting causes of action under Title VII, 42 U.S.C. § 1983, and state law. Both Mr. Johnson and the City of Chicago have moved to dismiss Ms. Donald's claims. For the reasons that follow, the motions to dismiss [45, 47] are granted in part and denied in part.

I.

In reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

I "accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). To survive a motion to dismiss, the complaint must state a claim "that is plausible on its face" after conclusory allegations are disregarded. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Ms. Donald has been a Chicago police officer since November 2006. ECF No. 34 ¶ 64. In the summer of 2015, while Ms. Donald was assigned to the First District, Ms. Donald caught Mr. Johnson's attention, and Mr. Johnson commented to a friend that she had a physically attractive appearance. *Id.* ¶¶ 65-66. In or around May 2016, acting as Superintendent, the highest-ranking official in the Chicago Police Department, Mr. Johnson had Ms. Donald reassigned from the First District to his personal detail at police headquarters. *Id.* ¶ 68. Approximately six months later, Mr. Johnson arranged for Ms. Donald to be his personal driver. *Id.* ¶ 69.

Shortly after Ms. Donald's reassignment to headquarters, Mr. Johnson began sexually assaulting and harassing Ms. Donald, including forcibly performing oral and vaginal sex on her, locking her in his office and conditioning her release on her performing sexual acts on him, sending her nude photographs, and making

2

derogatory and sexual remarks. *Id.* ¶¶ 7, 70, 77-78, 85, 87. This sexual assault and harassment continued for a period of three years, until the end of 2019. *Id.* ¶¶ 71, 76. Mr. Johnson used his position of power within the Chicago Police Department to pressure Ms. Donald into submitting to his sexual advances. For example, while she was studying for her Sergeant's exam, Mr. Johnson told Ms. Donald that he could facilitate her promotion to Sergeant as long as she "stay[ed] on his good side." *Id.* ¶ 96. He also threatened to demote a male officer who he believed was showing an interest in Ms. Donald. *Id.* ¶ 100.

On October 16, 2019, Mr. Johnson ordered Ms. Donald to accompany him to a restaurant. *Id.* ¶ 102. Later that night, after Ms. Donald had returned home, Mr. Johnson was found asleep in his car, allegedly intoxicated. *Id.* ¶¶ 103-04. The incident precipitated an investigation by Chicago's Office of the Inspector General into Mr. Johnson's conduct, and Ms. Donald alleges that in connection with that investigation, Chicago Mayor Lori Lightfoot "learned of Superintendent Johnson's highly inappropriate behavior" towards Ms. Donald. *Id.* ¶¶ 18, 105. Armed with this information, Mayor Lightfoot directed Mr. Johnson to demote Ms. Donald by "dumping" her back in the First District, away from headquarters. *Id.* ¶ 107. Instead of following that directive, however, Mr. Johnson transferred Ms. Donald to the records department on the second floor of headquarters so that he could

3

continue to harass her by ordering her to his fifth-floor office. *Id.* ¶ 111-12.

Various allegations of misconduct were brought against Ms. Donald in connection with the investigation of the October 16, 2019 incident. *Id.* ¶ 108. Ms. Donald alleges these allegations were brought "in retaliation" for her connection to the incident "and to deflect blame from Superintendent Johnson." *Id.* ¶ 109. Mr. Johnson was eventually terminated from the Chicago Police Department. *Id.* ¶ 122.

Ms. Donald also alleges that "[a]s more details relating to the October 16, 2019 incident came to light in the media, Superintendent Johnson confessed to Plaintiff that he damaged or destroyed evidence contained in his cell phone." *Id.* ¶ 115. The SIM card in Ms. Donald's own cell phone also was "damaged or destroyed" after she left her cell phone unattended on her desk. *Id.* ¶ 117-18.

In the instant suit, Ms. Donald brings three claims against the City of Chicago for: in Count I, a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; in Count III, equal-protection and due-process violations under 42 U.S.C. § 1983; and in Count VII, a violation of the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/2. In addition, she brings four claims against Mr. Johnson for: constitutional violations under 42 U.S.C. § 1983 (Count II); a violation of the Illinois

Gender Violence Act, 740 Ill. Comp. Stat. 82/5 (Count IV); "spoliation of evidence" (Count V); and a violation of the IHRA (Count VI). Both defendants have moved to dismiss all claims against them.

II.

I turn first to the City of Chicago's motion to dismiss. The City argues initially that Ms. Donald failed to state a claim under Title VII. "To state a Title VII hostile work environment claim, a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on [a] reason forbidden by Title VII [such as sex]; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Huri v. Office of the Chief Judge*, 804 F.3d 826, 833-34 (7th Cir. 2015). The City challenges only the fourth element—that there is a basis for employer liability. ECF No. 45 at 9.

In cases where the harassing employee was the plaintiff's supervisor, as both parties agree Mr. Johnson was here, ECF No. 45 at 10; ECF No. 54 at 2, whether there is a basis for employer liability depends on the consequences flowing from the harassment. If the harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment, the employer is strictly liable. *Vance v. Ball State Univ.*, 570 U.S. 421, 424

(2013); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). If there has been no tangible employment action, however, "the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided." *Vance*, 570 U.S. at 424.

Ms. Donald argues that she adequately alleged a tangible employment action sufficient to establish strict liability. Indeed, she contends that there were several tangible employment actions alleged in the complaint: (1) Ms. Donald's demotion to the records department, (2) the allegations brought against Ms. Donald in connection with the investigation into the October 16, 2019 incident, and (3) Mr. Johnson's harassing behavior itself. *See* ECF No. 54 at 3.

That Ms. Donald was charged with misconduct in the Office of the Inspector General investigation cannot serve as a tangible employment action sufficient to establish strict liability on the part of the City. "An employer is [only] vicariously liable for tangible employment actions undertaken *by the harassing supervisor*." *Johnson v. West*, 218 F.3d 725, 731 (7th Cir. 2000) (emphasis in original). There is no allegation in the complaint that Mr. Johnson played any role in the Office of the Inspector

6

General's investigation or in the determination that charges would be brought against Ms. Donald.

Nor can the harassing behavior itself constitute the tangible employment action here, even if the harassment resulted in a change of the conditions of Ms. Donald's employment. *See, e.g.*, *Gawley v. Ind. Univ.*, 276 F.3d 301, 311 (7th Cir. 2001) (finding no tangible employment action where supervisor made harassing comments and touched plaintiff's breast); *Stanfield v. Dart*, No. 10 C 6569, 2012 WL 6720433, at *7 (N.D. Ill. Dec. 27, 2012) ("[S]exual harassment, including harassment that results in sexual touching or relations, cannot alone constitute a tangible employment action."); *Macaddino v. Inland Am. Retail Mgmt., LLC*, No. 12 C 8655, 2015 WL 1281475, at *12 (N.D. Ill. Mar. 18, 2015) (same); *but see Johnson v. Bristol-Myers Squibb Co.*, No. 10 C 1553, 2010 WL 3927651, at *4 (N.D. Ill. Oct. 1, 2010). A contrary interpretation would create an exception that swallows the rule, because hostile-work-environment claims necessarily involve harassment.

Ms. Donald does allege, however, that Mr. Johnson transferred her from his private detail to the records department at headquarters in response to Mayor Lightfoot's directive to "dump" or demote her. ECF No. 34 ¶¶ 107, 111. The City argues that Mr. Johnson did not reassign Ms. Donald; the Mayor did. To the contrary—according to the complaint, the Mayor directed Mr.

7

Johnson to return Ms. Donald to the First District, but he placed her in the records department instead. *Id.* The City also argues that "a reassignment which does not involve a reduction in pay or benefits and no more than a minor change in working conditions does not qualify as an adverse employment action." ECF No. 45 at 11-12 (citing *O'Neal v. City of Chicago*, 392 F.3d 909, 912 (7th Cir. 2004)). But whether this was such an assignment is a question of fact more properly reserved for the summary-judgment phase. *See Griffin v. Chi. Housing Authority*, No. 14 C 2481, 2014 WL 6657799, at *4 (N.D. Ill. Nov. 24, 2014) ("[T]he fact-specific determinations involved in the question of employer liability are better left for summary judgment."). Accordingly, I conclude that Ms. Donald plausibly alleged a tangible employment action, and I decline to dismiss Count I.[1]

III.

The City of Chicago also moves to dismiss Count III, which asserts constitutional violations under 42 U.S.C. § 1983. "A municipality may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Instead, to establish

---

[1] Because Ms. Donald alleged a tangible employment action sufficient to trigger strict liability, I need not consider the City's argument that the complaint demonstrated the existence of an affirmative defense.

a municipality's liability, a plaintiff must show "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). The City argues that Ms. Donald has not alleged facts sufficient to show municipal liability.

Ms. Donald, however, alleged that "[t]he City of Chicago employed and conferred authority upon Superintendent Johnson to act with final policymaking authority [and] act in a supervisory capacity to CPD [Chicago Police Department] police officers," and that "Superintendent Johnson was the highest-ranking member of the CPD." ECF No. 34 ¶¶ 2, 35. "[D]efendants have the burden on a motion to dismiss to establish the legal insufficiency of the complaint," and here, the City "must establish that, as a matter of 'state and local positive law,' or as a matter of '"custom or usage" having the force of law,' [the defendant] was [not] a final policymaker." *Yeksigian v. Nappi*, 900 F.2d 101, 104-05 (7th Cir. 1990) (internal quotations omitted). "[T]he [City of Chicago] ha[s] not even discussed state or local law, let alone carried that burden." *Harris v. Town of Cicero*, 12 C 601, 2012 WL 4434720,

9

at *3 (N.D. Ill. Sept. 24, 2012). Accordingly, the motion to dismiss Count III must fail.[2]

IV.

The final claim Ms. Donald brings against the City of Chicago arises under the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/2. The City argues that Ms. Donald's claim must be dismissed because she failed to exhaust her administrative remedies under the IHRA. Generally, before initiating suit, plaintiffs must file a charge of discrimination with the Illinois Department of Human Rights ("IDHR" or "Department"). "[A] complainant may [then] file a civil suit after (1) she receives a final report from the IDHR, or (2) the IDHR fails to issue a report within a year after the charge is filed." *Baranowska v. Intertek Testing Servs. NA, Inc.*, No. 19 C 6844, 2020 WL 1701860, at *3 (N.D. Ill. Apr. 8, 2020) (citing 775 Ill. Comp. Stat. 5/7A-102(D), (G)).

Ms. Donald filed a charge with the EEOC on February 19, 2020. ECF No. 34 ¶ 28; ECF No. 45-7 at 4.[3] The charge was cross-filed with the IDHR, effective on the same date. *Id.*; 775 ILCS 5/7A-

---

[2] Ms. Donald has sufficiently alleged that Mr. Johnson was a final policymaker. Accordingly, I do not consider the City's arguments regarding the sufficiency of Ms. Donald's allegations that there was a widespread practice of sexual harassment within the Chicago Police Department.

[3] "[T]he court may take judicial notice of matters of public record, including records of administrative bodies such as the IDHR." *McGee v. United Parcel Serv., Inc.*, No. 01 C 9099, 2002 WL 449061, at *2 (N.D. Ill. Mar. 22, 2002).

102(A-1)(1) ("If a charge is filed with the [EEOC] . . . the charge shall be deemed filed with the Department on the date filed with the EEOC."). In the case of such a cross-filing, the IHRA provides that "the Department shall take no action until the EEOC makes a determination on the charge and after the complainant notifies the Department of the EEOC's determination." 775 ILCS 5/7A-102(A-1)(1). After the EEOC notifies the IDHR that the charge has been filed, the IDHR is required to notify the parties that "the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant." 775 ILCS 5/7A-102(A-1)(1)(iv). Once it has received the EEOC determination, the IDHR will either adopt the EEOC's determination or initiate its own investigation. 775 ILCS 5/7A-102(A-1).

Here, Ms. Donald did not forward the EEOC's determination to the IDHR within 30 days after she received it. The EEOC issued its notice of right to sue on July 20, 2020. ECF No. 34 ¶ 29; ECF No. 34-1 at 2. The IDHR did not confirm receipt of the EEOC's determination until nearly three months later, in October. ECF No. 34-2; ECF No. 45-7 at 9. At that time, the IDHR interpreted its receipt of the EEOC determination and underlying charge as a request by Ms. Donald "to have the discrimination charge [she] previously filed with the [EEOC] investigated by the [IDHR]," ECF No. 45-7 at 9, and issued a notice of right to opt out, *id.* at 17.

11

Under the IHRA, "[a]t any time within 60 days after the receipt of notice of the right to opt out, a complainant may submit a written request seeking notice from the Director indicating that the complainant has opted out of the investigation and may commence a civil action in [an] appropriate court of competent jurisdiction." 775 Ill. Comp. Stat. 5/7A-102(C-1). Within ten days after receipt of any request to opt out, the Director must notify the parties that the IDHR is closing the charge and "the complainant has 90 days after receipt of the Director's notice to commence an action." *Id.* That is precisely what happened here. Ms. Donald submitted an opt-out request on October 21, 2020, and the IDHR enter a notice of opt out and right to commence an action on October 30, 2020. ECF No. 34-2 at 3.

The City contends that Ms. Donald's failure to forward the EEOC determination to the IDHR within the 30-day period dooms her claim. I agree. The IHRA provides that "the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on complainant." 775 Ill. Comp. Stat. 5/7A-102(A-1)(1)(iv). Compliance with such a statutory time limit "'is a condition precedent to the right to seek a remedy' before an administrative body, and . . . a prerequisite to the acquisition of subject matter jurisdiction." *Bumphus v. Ill. Human Rights Comm'n*, 2021 IL App (5th) 200037-U, ¶ 17. Accordingly, where plaintiffs have failed to comply with

12

the 30-day notice requirement, courts have dismissed IHRA claims for lack of exhaustion of administrative remedies. *See Jafri v. Signal Funding LLC*, No. 19 C 645, 2019 WL 4824883, at *2 (N.D. Ill. Oct. 1, 2019); *Prusaczyk v. Hamilton Cty. Coal, LLC*, No. 3:20-CV-73-NJR, 2020 WL 5981377, at *3 (S.D. Ill. Oct. 8, 2020); *Ball v. Roeslein & Assocs., Inc.*, No. 20-CV-00045-NJR, 2020 WL 4673136, at *7 (S.D. Ill. Aug. 12, 2020).

Ms. Donald argues that she exhausted her administrative remedies by opting out of the IDHR's investigation under 775 Ill. Comp. Stat. 5/7A-102(C-1) and receiving a notice of right to sue. In support, she cites *Laurie v. BeDell*, in which the Southern District of Illinois held that even though the plaintiff "sent her EEOC right-to-sue letter to the IDHR 21 days late," the fact that the plaintiff had received a notice of dismissal authorizing her to commence an action within 90 days was sufficient for purposes of administrative exhaustion. No. 16-759-DRH-RJD, 2017 WL 1076940, at *4 (S.D. Ill. Mar. 22, 2017). But I am not persuaded by the court's reasoning in *Laurie*. "[A]n administrative agency . . . can only act 'pursuant to the authority conferred on it by statute.'" *Bumphus*, 2021 IL App (5th) 200037-U, ¶ 17 (citing *Pickering v. Ill. Human Rights Comm'n*, 496 N.E.2d 746, 754 (Ill. App. Ct. 1986)). Because the 30-day "statutory time limit is a condition precedent to . . . the acquisition of subject matter jurisdiction . . . , the Department lacked jurisdiction to review

13

the charge" when it received it in October. *See id.* ¶¶ 17-18. Accordingly, the notice of right to sue issued by the IDHR was without legal effect. Count VII is dismissed without prejudice.[4] *See Gill v. CEC Emp. Grp., LLC*, No. 19 CV 8099, 2020 WL 5909068, at *3 (N.D. Ill. Oct. 6, 2020) (dismissal without prejudice is proper when based on failure to exhaust of administrative remedies under IHRA even if claim is no longer timely).

V.

One final matter requires my attention with respect to the City of Chicago's motion to dismiss. Ms. Donald seeks punitive damages against the City of Chicago in her prayer for relief. However, punitive damages are not available under Title VII or 42 U.S.C. § 1983 against a municipality or government. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."); *Passanati v. Cook Cty.*, 689 F.3d 655, 677 (7th Cir. 2012) ("[U]nder Title VII, . . . [a government, government agency or political subdivision] cannot be held liable for punitive

---

[4] Ms. Donald also argues that she was excused from sending the EEOC's determination because the IDHR did not give her notice of the 30-day deadline as required under 775 Ill. Comp. Stat. 5/7A-102(A-1)(1). But that is belied by the administrative record. *See* ECF No. 59-1. Moreover, even if Ms. Donald did not receive the IDHR's letter, she had statutory notice of the 30-day deadline. *See Turner v. Human Rights Comm'n*, 2020 IL App (1st) 182586-U, ¶ 27, *appeal denied*, 163 N.E.3d 750 (Ill. 2021).

damages."). Accordingly, the prayer for punitive damages against the City is stricken.

VI.

I turn next to Mr. Johnson's motion to dismiss.[5] Mr. Johnson argues first that dismissal of Count II, which asserts constitutional violations under 42 U.S.C. § 1983, is appropriate because Ms. Donald has a remedy under Title VII. To the contrary, however, the Seventh Circuit has clarified that "the Fourteenth Amendment and Title VII have granted public sector employees independent rights to be free of employment discrimination. A plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII." *Trigg v. Fort Wayne Cmty. Schs.*, 766 F.2d 299, 302 (7th Cir. 1985).[6] Mr. Johnson also argues that Ms.

---

[5] Ms. Donald argues that Mr. Johnson cannot move to dismiss Counts II, IV, and V, which were included in the initial complaint, because Mr. Johnson answered that complaint rather than filing a motion to dismiss. But "[w]hen a plaintiff files an amended complaint, the new complaint supersedes all previous complaints[,] controls the case from that point forward[,] [and] wipes away prior pleadings." *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014). That Mr. Johnson answered the prior complaint is inapposite. *See Saleh v. Pfister*, No. 18-cv-1812, 2020 WL 2197838, at *1 n.2 (N.D. Ill. May 6, 2020).

[6] *Williams v. Penn. Human Relations Comm'n*, 870 F.3d 297 (3d Cir. 2017), cited by Mr. Johnson, is not to the contrary. That case held that § 1983, which does not provide substantive rights but merely provides a vehicle "for vindicating federal rights elsewhere conferred," cannot be used to assert an underlying Title VII violation. *Id.* at 297, 299. But that is not what Ms. Donald

15

Donald has failed to state an adverse employment action, but for the reasons noted above in the discussion of the City's motion to dismiss, I disagree. Accordingly, I decline to dismiss Count II.

## VII.

Count IV asserts a claim against Mr. Johnson under the Illinois Gender Violence Act ("IGVA"), 740 Ill. Comp. Stat. 82/5. Mr. Johnson argues that the IGVA claim should be dismissed because it is preempted by the IHRA. But courts that have considered the issue have disagreed. *See Hespe v. City of Chicago*, 307 F. Supp. 3d 874, 888-89 (N.D. Ill. 2018) (allowing IGVA claim to continue despite argument it was preempted by IHRA); *Vince v. Ill. Cent. Sch. Bus, LLC*, No. 09 C 5360, 2011 WL 578832, at *17 (N.D. Ill. Feb. 9, 2011) (same). It does not matter that there may be factual overlap between the claims; "the issue is whether plaintiff can state a claim without reference to the Illinois Human Rights Act." *Hespe*, 307 F. Supp. 3d at 888-89. Count IV may proceed.

## VIII.

Mr. Johnson next argues that Count V should be dismissed because no cause of action for "spoliation of evidence" exists under Illinois law. That is true enough, but it is not grounds

---

does here. Her § 1983 claim is based on underlying *constitutional* violations, *see* ECF No. 34 ¶ 149; her Title VII claim is asserted separately. As the *Williams* court itself noted, "the comprehensive scheme provided in Title VII does not preempt section 1983 [and] discrimination claims may be brought under either statute, or both." 870 F.3d at 300 n.34.

for dismissal. "The issue is merely terminological . . . . Illinois courts have treated negligent spoliation claims as a particular species of ordinary negligence claims." *Mobile Mark v. Pakosz*, No. 11 C 2983, 2011 WL 3898032, at *5 (N.D. Ill. Sept. 6, 2011) (declining to dismiss "spoliation" claim).

To prevail on her negligent spoliation claim, Ms. Donald will eventually need to show "duty (in this case to protect documents), a breach of that duty, causation, and damages." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 510 (7th Cir. 2007). Mr. Johnson maintains that Ms. Donald did not allege damages. But to the contrary, Ms. Donald alleged that she has been "severely injured because if Superintendent Johnson had not destroyed his own cell phone, [she] would have been able to introduce additional evidence of her sexual discrimination and harassment case against Defendants." ECF No. 34 ¶ 171. This allegation is sufficient. *See Stoner v. Wal-Mart Stores, Inc.*, No. 06-4053, 2008 WL 3876077, at *3 (C.D. Ill. Aug. 18, 2008) (declining to dismiss spoliation claim and explaining that "the injury that must be proven is that 'defendant's loss or destruction of the evidence caused the plaintiff to be unable to prove an otherwise valid, underlying cause of action'" (citing *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 272 (Ill. 1995)).). I decline to dismiss Count V.[7]

---

[7] Mr. Johnson also argues in his reply that Ms. Donald failed to allege that Mr. Johnson had a duty to preserve the evidence. But

17

IX.

Finally, Mr. Johnson moves to dismiss Count VI, which asserts an IHRA claim. Mr. Johnson argues first that the IHRA does not provide for liability against individuals. But in the particular context of sexual harassment, the IHRA prohibits "any employer, *employee, agent of any employer*, employment agency or labor organization" from engaging in sexually harassing behavior. 775 Ill. Comp. Stat. 5/2-102(D). Accordingly, "an individual may be held liable for sexual harassment under the IHRA." *Stokes v. John Deere Seeding Grp.*, No. 4:12-cv-04054-SLD-JEH, 2014 WL 4901765, at *13 n.6 (C.D. Ill. Sept. 29, 2014); *see also Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017).

Mr. Johnson also argues that Ms. Donald never named Mr. Johnson in her charge filed with the IDHR, and so has not exhausted her administrative remedies. But to the contrary, Mr. Johnson was repeatedly named and his behavior described at length in the charge cross-filed with the EEOC and IDHR. *See* ECF No. 45-7 at 4-7. However, for the same reasons discussed in connection with the City of Chicago's motion to dismiss Claim VII, Ms. Donald failed to exhaust her administrative remedies because she failed to forward the EEOC's determination to the IDHR within the 30-day

---

"[a]rguments made for the first time in a reply brief are waived." *Cuff v. Trans States Holdings, Inc.*, No. 10 C 1349, 2010 WL 2698299, at *4 (N.D. Ill. July 8, 2010).

time limit. *See* 775 ILCS 5/7A-102(A-1)(1)(iv). Accordingly, Claim VI is dismissed without prejudice. *See Gill*, 2020 WL 5909068, at *3.

X.

For the foregoing reasons, the motions to dismiss [45, 47] are granted in part and denied in part. Claims I-V may proceed, but Claims VI and VII are dismissed without prejudice. The prayer for punitive damages against the City of Chicago is stricken.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: May 14, 2021