IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA DONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20 CV 6815 |
| | ) | |
| | ) | Hon. Elaine E. Bucklo |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendant. | ) | |

**DEFENDANT JOHNSON'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Defendant, Eddie Johnson ("Mr. Johnson"), by and through his undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and the applicable Local Rules, respectfully moves this Court for the entry of summary judgment in his favor and against Plaintiff Cynthia Donald ("Ms. Donald") on all Counts asserted against him by Ms. Donald in her Amended Complaint, and submits this Memorandum of Law in support:

**I.   FACTS**

Mr. Johnson incorporates by reference, as though fully set forth herein, the facts set forth in his accompanying Rule 56.1 Statement of Material Facts (hereinafter "Facts"). Mr. Johnson also cites to certain facts set forth therein where applicable to his arguments below.

**II.   ARGUMENT**

**This Court Should Grant Summary Judgment In Favor Of Mr. Johnson And Against Ms. Donald On All Counts Of Her Complaint Based Upon Ms. Donald's Attempted Fraud Upon The Court**

In January 2019, Ms. Donald spoke to her friend and fellow CPD Officer Claudio Salgado Yanez ("Salgado"). *See* Facts at para. 56. Ms. Donald told Salgdo that Mr. Johnson was

1

a very good person; that she enjoyed working for Mr. Johnson; that she was very happy working for Mr. Johnson; that she thought working for Mr. Johnson was a good opportunity; and that she had a lot of respect for Mr. Johnson. *Id.* at Facts at para. 56.

In February or March 2019, Ms. Donald brought Mr. Johnson out to dinner as her date to meet with Salgado and some of his friends. *Id.* at Facts at 57. Later in 2019, Ms. Donald and Mr. Johnson joined Salgado at another dinner outing. *Id.* at Facts at 58.

Subsequently, in the March/April 2020 time period, Ms. Donald contacted Salgado. *Id.* at Facts at para. 59. During these communications, Ms. Donald attempted to "bribe" Salgado. *Id.* at Facts at para. 59.

Ms. Donald told Salgado that, if he helped him in her lawsuit and say things about Mr. Johnson, she would "take care" of him by giving him money from the proceeds to pay for the healthcare of his (Salgado's) father, and that she would see to it that he got a promotion. *Id.* at Facts at para. 60.

Ms. Donald further explained that the City always settles its lawsuits, and that as part the settlement of her claims, she would get out a promotion out of it – and could, in turn, get Salgado promoted. *Id.* at Facts at para. 61.

Salgado turned down Ms. Donald's attempt to bribe him to take against with her against Mr. Johnson. *Id.* at Facts at para. 62. Thereafter, Ms. Donald continued to contact Salgado in further attempts to bribe him by contacting him from a variety of different phone numbers. *Id.* at Facts at Facts at para. 63.

Ms. Donald's bribery scheme calls into question not only all of her claims, but all of the witness testimony that she intends to offer at trial – as well as, of course, all of her own testimony. In short, Ms. Donald's conduct amounts to a "fraud upon the court." A "fraud upon

the court" is an "unconscionable plan or scheme which is designed to improperly influence the court in its decision. *See, e.g., National Oilwell Varco v. Auto-Dril, Inc.*, No. 21-40648, 2023 WL 3411189 (5th Cir. 2023), at *8 (citations omitted); *see also Alabi v. Homecomings Financial, LLC*, No. 09-cv-4757, 2011 WL 4398140 at *4-5 (N.D. Ill., Sept. 11, 2011) (explaining fraud on the court).

Therefore, on that basis alone, this Court should grant judgment in favor of Mr. Johnson and against Mr. Donald on all of her claims asserted against him in her Amended Complaint, and award Mr. Johnson his attorneys' fees and costs. Such a draconian remedy is clearly merited in this case because Ms. Donald's misconduct, here her attempted bribery, calls into question the veracity of her testimony and claims, and any witness that she calls to testify at trial.

Alternatively, this Court should hold an evidentiary hearing to make findings as to whether Ms. Donald engaged in attempted bribery and thus a fraud upon this Court and the judicial process.

> **This Court Should Enter Summary Judgment In Favor Of Mr. Johnson And Against Ms. Donald On Counts II, IV, and VI Because The Record Evidence Establishes, As A Matter Of Law, That Ms. Donald And Mr. Johnson Were Engaged In A Consensual Physical Relationship, That Mr. Johnson Therefore Did *Not* Engage In Any Unwanted Conduct, And That In Any Event Ms. Donald By Her Words, Actions, And Inaction Reasonably Caused Mr. Johnson To Believe That The Parties Were Involved In A Consensual Relationship And That His Conduct Was *Not* Unwanted**

Counts II, IV, and VI are premised upon the fiction that Mr. Johnson directed unwanted conduct of a sexual nature to Ms. Donald, and that the parties were somehow engaged in a non-consensual intimate and sexual relationship. The record evidence clearly establishes that no genuine issue of material remains as to whether Ms. Donald and Mr. Johnson were actually engaged in a long-standing consensual relationship. Indeed, as set forth below, the record

3

evidence demonstrates that by her words, actions, inaction, and after the fact representations, Ms. Donald herself believed and acted as if she was at all times engaged in a consensual relationship with Mr. Johnson. Moreover, even if she was at all times simply "faking" that she was in fact engaged in a consensual relationship with Mr. Johnson, and simply faking that she "loved" Mr. Johnson, her words, actions, and inaction clearly resulted in Mr. Johnson, like any objective or reasonable person under the circumstances, to believe and rely upon the fact that he and Ms. Donald were at all times engaged in a consensual relationship and that his conduct towards Ms. Donald was *not* "unwanted."

Here, even before she worked for Mr. Johnson, Ms. Donald already knew Mr. Johnson, and had previously hung out with him, socialized with him, and drank with him. *See* Facts at para. 1. Thus, even before working for Mr. Johnson, Ms. Donald thought he was a good guy and had fun hanging out with him. *Id.*

While working for Mr. Johnson, and over a long period of time (years) while working with Mr. Johnson, Ms. Donald, repeatedly told Mr. Johnson that she loved him. *Id.* at Facts at para. 2.

During that time period, Ms. Donald had an intimate relationship with Mr. Johnson which included her telling him a lot about her own personal life. *Id.* at Facts at para. 3.

Ms. Donald introduced Mr. Johnson to her mother. *Id.* at Facts at para. 5.

As part of their relationship, Ms. Donald invited Mr. Johnson over to her mother's house in 2018 or 2019. *Id.* at Facts at para. 6. On that occasion, Ms. Donald and Mr. Johnson hung out with Ms. Donald's mom and sisters for about two hours. *Id.*

As part of their relationship, Ms. Donald also introduced Mr. Johnson to her sisters. *Id.* at Facts at para. 7.

Ms. Donald told Mr. Johnson that she loved him on numerous occasions. *Id.* at Facts at para. 8.

Ms. Donald told people that Mr. Johnson was her "boyfriend." *Id.* at Facts at para. 9.

Ms. Donald initiated and threw a birthday party for Mr. Johnson. *Id.* at Facts at para, 10. Ms. Donald threw that party because she thought Mr. Johnson was such a good guy and good friend, and special boss. *Id.*

Ms. Donald invited her mother to that birthday party; she attended; and thereafter Ms. Donald and her mother exchanged pictures from the party with each other. Id. at Facts at para. 11.

Ms. Donald introduced Mr. Johnson to her friends. *Id.* at Facts at para. 12.

Ms. Donald introduced Mr. Johnson to her hairdresser. *Id.* at Facts at para. 13.

Ms. Donald texted Mr. Johnson outside of work hours on a regular basis. *Id.* at Facts at para. 14.

In her non-work communications with Mr. Johnson, she referred to and called him "BAE," short for "Babe." *Id.* at Facts at para. 15.

Ms. Donald sent Mr. Johnson pictures of her underwear on dozens of occasions. *Id.* at Facts at para. 16.

Ms. Donald sent Mr. Johnson pictures of her breast and other body parts on numerous occasions. *Id.* at Facts at para. 17.

Ms. Donald never told Mr. Johnson that she did not want to send him the types of pictures of her referenced above. *Id.* at Facts at para. 18.

In response to one of Mr. Johnson's texts to her about what was for lunch, Ms. Donald responded, "Me." *Id.* at Facts at para. 19.

On Christmas day, Ms. Donald texted Mr. Johnson to tell him he was "handsome." *Id.* at Facts at para. 20.

On another occasions, Ms. Donald texted Mr. Johnson to tell him, "**l love you great man.**" *Id.* at Facts at para. 21.

On another occasion. Ms. Donald texted Mr. Johnson to tell him that she was taking a bath and told him to come over to her house. *Id.* at para. 22.

On Father's Day, Ms. Donald emailed Mr. Johnson, and stated:

**Happy Father's Day to a very special man Please enjoy and reflect on this day your accomplishments as one of the greatest black dads the world. <u>I love you</u>.**

*Id.* at Facts at para. 23.

On other occasions, Ms. Donald sent Mr. Johnson a series of texts in which she called him "cutie" in one and "handsome in another." *Id.* at Facts at para. 24.

On other occasions, Ms. Donald and Mr. Johnson exchanged texts in which they told each other that they love one another. *Id.* at Facts at para. 25,

On another occasion, Ms. Donald texted Mr. Johnson pictures of her son. *Id.* at Facts at para. 26.

Ms. Donald admitted that, by way of her communications with Mr. Johnson, **Ms. Donald wanted him to believe that they were having an affair.** *Id.* at Facts at para. 28.

Thus, Ms. Donald agreed and admitted that someone looking at or receiving those communications would believe that a "genuine relationship" between her and Mr. Johnson was taking place. *Id.* at Facts at para. 29.

Ms. Donald and Mr. Johnson regularly and consensually hung out in hotel rooms in the City and ate, drank, and talked. *Id.* at Facts at para. 30.

Ms. Donald regularly went out socializing with her friends and Mr. Johnson, including to

bars and restaurants, and with Mr. Johnson's friends. *Id.* at Facts at para. 31.

Ms. Donald admitted that she engaged in all of the above activities, and that no one forced or pressured to engage in them. *Id.* at Facts at para. 32.

**Ms. Donald never told Mr. Johnson that she did *not* want to have sexual relations with him, *including while they were having sexual relations*.** *Id.* at Facts at para. 33.

However, Ms. Donald claimed that she was "faking" having fun with Mr. Johnson. *Id.* at Facts at para. 34.

**Ms. Donald admitted that she was attempting to make Mr. Johnson believe that she cared for him.** *Id.* at Facts at para. 35.

Ms. Donald considered herself friends and friendly with Mr. Johnson. *Id.* at Facts at para. 36.

As part of their relationship, Ms. Donald went on trips to other cities with Mr. Johnson. including London, Springfield, New York, and New Orleans. *Id.* at Facts at para. 37.

On the Springfield trips, Ms. Donald slept with Mr. Johnson, and did not tell him no. *Id.* at Facts at para. 38.

On the New Orleans trip, Ms. Donald and her sister hung out with Mr. Johnson and went drinking. *Id.* at Facts at para. 39. Ms. Donald slept with Mr. Johnson on both of the nights in New Orleans. *Id.*

On yet another occasions, Ms. Donald and Mr. Johnson drove to another city to see a Anita Baker concert together, but Ms. Donald claimed she could not even remember the name of that city. *Id.* at Facts at para. 40. On that trip, Ms. Donald again slept with Mr. Johnson. *Id.*

Ms. Donald claimed that she could not recall if she went on yet another trip with Mr. Johnson, this time to San Diego. *Id.* at Facts at para. 41.

Ms. Donald went to Blue Man Group with Mr. Johnson. *Id.* at Facts at para. 42.

Ms. Donald never complained to Human Resources about Mr. Johnson, or reported him. *Id.* at Facts at para. 43. Likewise, Ms. Donald never complained to Internal Affairs about Mr. Johnson or reported him. *Id.*

After Ms. Donald's relationship with Mr. Johnson became known publicly, and unbeknownst to Mr. Johnson, Ms. Donald was planning to file a lawsuit against the City and him, and Ms. Donald had Mr. Johnson drive her to her attorneys' offices downtown – but did not tell him she was going to meet with her lawyers, nor that part of her plan was to sue Mr. Johnson. *Id.* at Facts at para. 45.

After Ms. Donald's relationship with Mr. Johnson became known publicly, Ms. Donald also met with Mr. Johnson on other occasions. *Id.* at Facts at para. 46.

This included inviting and having Mr. Johnson over to, and in her own house. *Id.* at Facts at para. 47. Ms. Donald did *not* tell her husband that she was having Mr. Johnson over and into their house. *Id.*

This also included a meeting with him at a restaurant downtown. *Id.* at Facts at para. 48.

This also included another occasion in **February 2020** where she sat and had drinks with Mr. Johnson his friends at a bar at 100th and Torrance, after driving over to that bar where they were hanging out. *Id.* at Facts at para. 49. She sat next to Mr. Johnson on that occasion. *Id.*

Ms. Donald also met with the Inspector General ("IG") about Mr. Johnson, and testified that she did **not** lie to them. *Id.* at Facts at para. 50. She admitted that she was asked about Mr. Johnson and the nature of their relationship, and she did **not** claim to the IG that Mr. Johnson had ever sexually harassed her or done anything wrong, or that their relationship was in any way non-consensual. *Id.* at Facts at para. 51.

Ms. Donald met with the IG for a second time; was again questioned about the nature of her relationship with Mr. Johnson; claims that she was again entirely truthful; and again did **not** claim that Mr. Johnson has ever sexually harassed her and done anything wrong, or that their relationship was in any way non-consensual. *Id.* at Facts at para. 52.

Ms. Donald also met with outside counsel Tom Needham, who also asked her questions about Mr. Johnson and her relationship with him; she answered those questions truthfully; and she did not claim that her relationship with Mr. Johnson was non-consensual or that Mr. Johnson had ever sexually harassed her and done anything wrong. *Id.* at Facts at para. 53.

Ms. Donald knew that the City of Chicago's rules and the Chicago Police Departments rules prohibited sexual harassment and sexual assault; that she had a duty to report any such conduct if it had ever actually occurred; but she never reported any such conduct by Mr. Johnson. *Id.* at Facts at para. 54.

In sum, based upon all of the foregoing undisputed facts, there is no question that, including as admitted to by Ms. Donald in the numerous ways referenced above, as a matter of law, Ms. Donald and Mr. Johnson were engaged in a consensual relationship. Thus, Ms. Donald's claims in each of those Counts fails as a matter of law. Accordingly, Ms. Donald's claims against Mr. Johnson, as set forth in Counts II, IV, and VI of her Amended Compliant – which each require the conduct of Mr. Johnson to be intentionally unwanted and non-consensual - fail because no genuine issues of material fact remain. Therefore, this Court should enter summary judgment in favor of Mr. Johnson and against Ms. Donald on each of those Counts, and award him his costs.

In any event, even if Ms. Donald was only attempting to dupe Mr. Johnson into believing that they were engaged in a consensual intimate and sexual relationship, her claims still fail. *See,*

*e.g., Meritor Savings Bank v. Vinson*, 477 U.S. 57, 68 (1986); *Mosher v. Dollar Tree Stores, Inc.*, 240 F.3d 662 (7th Cir. 2001); *Sanders v. Chicago Transit Authority*, 2022 WL 971879 at *5 (N.D. Ill. March 31, 2022). On that alternative basis, this Court should enter summary judgment in favor of Mr. Johnson and against Ms. Donald on each of those Counts, and award him his costs.

Finally, as further support for his arguments in this section, Mr. Johnson hereby adopts, relies upon, and incorporates by reference as though fully set forth herein, the Defendant City of Chicago's arguments and case law, cited at pages 9 though of 11 of its brief in support of its Motion for Summary Judgment. *See* Dkt. at No. 217 ("Donald cannot demonstrate Johnson's conduct was unwelcome or objectively hostile (Counts I and III)").

**This Court Should Enter Summary Judgment In Favor Of Mr. Johnson And Against Ms. Donald On Count V, Alleged Spoilation Of Evidence, Because Ms. Donald's Own Testimony Establishes That This Claim Is Entirely Baseless, And She Has Failed To Come Forward With Any Admissible Record Evidence In Support Of This Claim To Create A Genuine Issue Of Material Facts**

Count V is premised upon Ms. Donald's baseless assertion that Mr. Johnson purportedly took her "SIM" card from her phone and therefore somehow deleted her texts. But Ms. Donald's own sworn deposition testimony likewise dooms this claim. Here, Ms. Donald testified that her husband took her "SIM card" out of her work phone. *Id.* at Facts at para. 54. Yet, Ms. Donald still filed the present lawsuit, without any factual basis, claiming that Mr. Johnson took it. *Id.* Accordingly, this Court should: 1) enter summary judgment in favor of Mr. Johnson and against Ms. Donald on Count V, and 2) grant Mr. Johnson his reasonable attorneys' fees and costs based upon Ms. Donald's assertion of a claim that she knew, at the time of filing, was legally and f

factually baseless.[1]

Moreover, it was, and remains, Ms. Donald's burden to come forward with sufficient evidence in support of this and her other claims. Indeed, a nonmoving party must do more than simply show some metaphysical doubt as to material facts. *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019). Inferences supported only by speculation or conjecture are insufficient. *Johnson*, 936 F.3d at 706. Likewise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to show a genuine issue of material fact." *Burton*, supra, 934 F.3d at 579. Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to a party's case, and on which that party will bear the burden of proof at trial." *Hakim v. Accenture United States Pension Plan*, 718 F.3d 675, 681 (7th Cir. 2013) (internal quotation marks and citation omitted). The court construes the evidence in the light most favorable to the non-moving party. *Foley v. City of Lafayette*, F.3d 925, 928 (7th Cir. 2004). For those additional reason, Ms. Donald's claim in Count V fails.

**WHEREFORE**, Defendant, Eddie Johnson, by and through his undersigned counsel, respectfully requests that this Court enter summary judgment in his favor and against Plaintiff Cynthia Donald on all Counts asserted against him in her Amended Complaint, and for such other and further relief as is appropriate under the circumstances.

---

[1] Mr. Johnson also joins, and incorporates by reference as though fully set forth herein, any and all arguments made by the Defendant City of Chicago in its Motion for Summary Judgment and supporting Memorandum, to the extent that they also apply to Mr. Johnson.

11

             **RESPECTFULLY SUBMITTED,**

          **By:** <u>**s/Michael I. Leonard**</u>
              **Counsel for Mr. Johnson**

**LEONARD TRIAL LAWYERS**
Michael I. Leonard
Matthew Chivari
120 North LaSalle, 20th Floor
Chicago, Illinois 60602
(312)380-6659 (direct)
(312)264-0671 (fax)
mleonard@leonardtriallawyers.com

## **CERTIFICATE OF SERVICE**

I, Michael Leonard, an attorney, certify that I caused a copy of foregoing to be served upon all parties of record by email on May 29, 2023.

> By: <u>s/ Michael I. Leonard</u>
> **Counsel for Mr. Johnson**